PASCAL ARNOLD, Plaintiff in Error, v. CECIL
WILEY, Defendant in Error.—284 S. W. (2d) 296.

Eastern Section.  April 19, 1955.

Petition for Certiorari denied by Supreme Court, August 2, 1955.

Margraves & Mayes, of Rogersville, for Plaintiff in Error.

Phillips & Hale, of Rogersville, for Defendant in Error.

McAMIS, P. J.   This is an action for damages growing out of fisticuffs between the parties on July 7, 1953 immediately following and accompanied by, abusive language and provocative charges.   The plaintiff sued in separate counts for compensatory and punitive damages in the sum of $10,000.   The jury returned a verdict for $25 and costs which the court approved in overruling plaintiff's motion for a new trial.

Plaintiff Pascal Arnold has appealed and assigned as error that the verdict allows nothing for loss of time, said to amount to $384, for pain and suffering endured as the result of the assault or for punitive damages.   On the ground alone of the inadequacy of the verdict and judgment it is insisted a new trial should have been granted

by the trial court and should now be granted by this court. There is no evidence to sustain defendant's pleas of self-defense and unless the smallness of the verdict can be justified on the ground of provocative and abusive words and charges uttered by the plaintiff prior to the assault, we agree that the amount allowed by the jury is manifestly inadequate. The undisputed proof shows that plaintiff incurred medical expenses in the amount of $36.10, or $11.10 in excess of the amount allowed by the jury and there is evidence that he suffered a broken nose and, according to his physician, he was incapacitated from work for about a week.

The proof is that on the day in question plaintiff, accompanied by Walter Hyleman, his employer, walked along a road near defendant's saw mill for the purpose of entering plaintiff's truck which was parked about 150 feet beyond the mill. Defendant engaged Hyleman in conversation about some matter of mutual interest to them. According to defendant's version, he had received information that plaintiff had moved some slabs belonging to defendant and while the three of them were "just talking there" he asked plaintiff who had given him authority to move the slabs and plaintiff replied that his father and some other man whose name he could not remember had authorized him to get the slabs. Defendant says he then told plaintiff that the slabs belonged to him and that "all I want you to do is just put them back up there". According to defendant, plaintiff thereupon said that he had as good a right to get the slabs as defendant did to take plaintiff's potatoes. Apparently, defendant then realized that plaintiff was becoming angry for he then admonished him to go on—that he wanted no trouble about the slabs. However, according to defendant, plaintiff called him a liar "about a number

of things'' and began to curse him having, meanwhile, entered the truck and seated himself under the steering wheel.

Defendant admits that he then opened the right door of the truck and assaulted plaintiff, striking him on the nose and forehead with his fist, and that he later procured the issuance of a warrant and submitted and paid a fine for assault and battery before a Justice of the Peace.

Although plaintiff's testimony is to the effect that as soon as defendant saw him he assumed a belligerent attitude about the slabs and began to curse and accuse him of stealing the slabs, the jury may have found from defendant's testimony that he merely sought to find out by what authority plaintiff claimed to own the slabs and to ask that he return them and that plaintiff thereupon assumed the offensive in verbal combat, unjustly accused defendant of stealing his potatoes and indulged in the use of provocative epithets. Under the familiar rule, we are not empowered to weigh this dispute in the evidence but must take the strongest legitimate view of all the evidence tending to support the verdict.

While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati, N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564, 570.

The jury might well infer from defendant's testimony that the verbal abuse of plaintiff provoked the assault. He testified:

"What had Pascal done to you to get you to go in the truck there after him, Mr. Wiley?

"Well, he accused me of lying and stealing potatoes."

The rule in Tennessee with respect to mitigation of damages on the ground of provocative words is clearly stated in Daniel v. Giles, 108 Tenn. 242, 66 S. W. 1128, where it was said:

"While no words, or insults, or opprobrious epithets can justify an assault and battery, still, in a civil action for assault and battery, evidence of provocation, calculated to heat the blood or arouse the passions of a reasonable man, offered at the time of the assault and battery, or so recently before as to constitute part of the res gestae, is admissible and must be considered by the jury in mitigation of damages."

The opinion cites for the rule the early cases of Jacaway v. Dula, 15 Tenn. 82 and Chambers v. Porter, 45 Tenn. 273. See also Evans v. Bryan, 24 Tenn. App. 405, 145 S. W. (2d) 557; Jenkins v. Hankins, 98 Tenn. 545, 41 S. W. 1028, 1030.

In the Jenkins case, last cited, the jury returned a verdict for one cent and costs in favor of the estate of the intestate who was killed by the defendant. In reversing the action of the trial judge setting aside the verdict on motion of the plaintiff and ordering that a judgment be rendered on the verdict for only one cent, the court said: "Under the circumstances,—provocation and attack of the deceased, its violence and its danger to defendant,— even though he may not have been technically altogether in the right, so as to require that they render a verdict on the issues for him, the jury might very well have as-

sumed that deceased having provoked the difficulty brought the result upon himself, and was not entitled to anything but nominal damages * * *. In cases of this character it is peculiarly their province, in determining the issues, to fix the amount of damages, and to fix it with proper abatement on account of the contributing fault of the deceased. Their action is not controllable by the court below or this court, unless, as already stated, we can see that it was brought about under the improper influences indicated.''

In that case the deceased who was unarmed assaulted the defendant who shot him. The deceased then retreated but was followed by defendant and again fired upon and fatally wounded. It was held that it was for the jury to say whether, under the circumstances, the defendant used more force than necessary; that there was no basis for imputing to the jury partiality, prejudice or corruption and, as indicated from the above quotation, whether the estate was entitled only to nominal damages, the extent of the mitigation being peculiarly a matter for the jury.

It is argued that, since in this case the verdict of the jury is for an amount less than the medical bills incurred, the jury must have been actuated by prejudice and caprice. A number of authorities, including an annotation at 20 A. L. R. (2d) 276, are cited for the rule.

As we have seen, however, the diminution of damages in assault and battery cases due to provocative conduct by the plaintiff is peculiarly a matter for the jury. Jenkins v. Hankins, supra.

Although in some jurisdictions provocative words or conduct are held not a proper basis for mitigation of damages, Tennessee is definitely aligned with the contrary view. The reasons for and against mitigation were ably summarized by Justice White in 1814 in Newman v. Mc-

Nairy, 158 Tenn. Appendix p. 86, which see in addition to later Tennessee cases cited supra. We have no holding to the contrary.

Where the rule of mitigation prevails as to compensatory damages it is upon the theory that the plaintiff himself was guilty of an act which led to a disturbance of the public peace and thus brought about his own injury.

"* * * The reason for the rule allowing provocation to be introduced in evidence for the purpose of mitigating actual or compensatory damages is that as the plaintiff provoked the assault, he is himself guilty of the act which led to the disturbance of the public peace. The doctrine is correlative to the rule which permits circumstances of aggravation, such as time and place of assault, or insulting words, or other circumstances of indignity or contumely, to increase them. If the injury of which the plaintiff complains came in part from his own act, there is less reparations demanded from the defendant, for the law seeks to do justice between the parties and will not require one to atone for the other's error. If satisfaction is to be made for the breach of public order, it is not due him, for his own wrong is the consideration upon which it stands." 4 Am. Jur. 205, Assault and Battery, Sec. 165.

The cases covered by the annotation, 20 A. L. R. (2d) 276, cited in plaintiff's brief wherein the jury awarded the plaintiff the exact amount of the medical bills incurred in treating his injury proceed on the theory that the jury, through prejudice or caprice, has disregarded the court's charge in disallowing recoverable elements of damage such as pain and suffering and loss of time. Such cases are not considered in point because here the jury simply mitigated the amount necessary to compensate plaintiff for his injuries.

It would be difficult, if not impossible, for us to determine the amount by which the jury reduced what they thought to be just compensation. If they believed plaintiff's testimony the mitigation would be severe indeed; for he testified that he was employed at $48.00 per week and lost a number of weeks due to his injury. And, according to his testimony, he suffered rather severe injuries to his nose which may have resulted in improper drainage from his sinus. Plaintiff's character was impeached, however, and the jury may have disregarded his testimony. His physician, as shown, fixed the period of disability at one week and found that his nose had healed at the time of the trial.

If the jury believed that plaintiff became angry when defendant inquired in a civil way as to his authority for removing slabs and indulged in verbal abuse of defendant, even though defendant retaliated in kind and also with blows, we cannot say that the jury acted with improper motives in mitigating the damages to the extent shown.

It results that the assignments are overruled and judgment affirmed with costs.

Felts and Howard, JJ., concur.