John Phillip SMYTHE and Irvin Bogatin, Co-Executors of the Estate of Joseph C. Smythe, Deceased, Plaintiffs-Appellants,

v.

EASY QUICK STORES, INC., and Joseph W. Sharpe, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 29, 1988.

Application for Permission to Appeal Denied by Supreme Court May 23, 1988.

Wilbert J. Chiapella, Memphis, for plaintiffs-appellants.

Richard Glassman, Carl Wyatt, Memphis, for defendant-appellee, Easy Quick Stores.

Edward M. Hurley, Memphis, for defendant-appellee, Joseph W. Sharpe.

CRAWFORD, Judge.

In this wrongful death action, the trial court entered a judgment on a jury verdict for plaintiffs, John Phillip Smythe, and Irvin Bogatin, co-executors of the Estate of Joseph C. Smythe, deceased, against defendants, Easy Quick Stores, Inc., and Joseph W. Sharpe in the amount of $1.00. From the trial court's denial of plaintiffs' motion for a new trial, plaintiffs appeal to this court.

Plaintiffs, as the duly appointed co-executors of the Estate of Joseph C. Smythe, deceased, allege in their complaint, as amended, that the deceased, on September 28, 1984, was an invitee at the Easy Quick store located at 1041 Linden and managed by defendant, Sharpe. The complaint avers that because of a dispute or controversy concerning the manner in which the deceased parked his vehicle in front of the store, the defendant Sharpe threw him out or ejected him from the front door of the establishment and hit the deceased with his fist in such a manner as to cause physical injury resulting in his death. The complaint further states:

Plaintiffs allege that the conduct of the defendant, Sharpe, as heretofore described, was imputable to his co-defendant, Easy Quick Stores, Inc., and constituted gross negligence, recklessness, malice and assault and battery upon the deceased, which conduct was the direct and proximate cause of the deceased's injuries, death and damages herein alleged.

The defendants filed separate answers joining issue on the material allegations of the complaint except as to Easy Quick's liability to plaintiff under the doctrine of respondeat superior. Easy Quick denies that defendant Sharpe was acting within the course and scope of his employment in connection with the incident, and Sharpe avers that he was acting within the scope and course of his employment. The answers further aver that the deceased was asked to leave the premises because of his actions, but refused to do so. Defendants further aver that while defendant Sharpe was moving the deceased toward the door the deceased struck him and that Sharpe thereupon struck the deceased in self-defense and with provocation.

We will summarize the facts as pertinent to the issues presented on appeal. At approximately 11:30 p.m. on Friday, September 28, 1984, the decedent, a 70 year old widower, accompanied by Ms. Juanita Stevens, a 63 year old widow, drove his automobile to the front of the Easy Quick Drive-In Grocery located at 1041 Linden Circle in Memphis. Although lines were marked off in front of the store for perpendicular parking, the decedent drove his automobile parallel to the front of the store across the perpendicular parking lanes. Decedent entered the store and inquired of a clerk, Lancaster, about merchandise which he sought to purchase. The deceased then started toward the back part of the store looking for the merchandise, and the defendant Sharpe, manager of the store, told the deceased that he should move his car because he would get blocked in. The deceased replied that he would not get blocked in and then walked toward the front of the store to the cash register stand where Sharpe was located. Sharpe then told the deceased that he had come to the wrong store and the deceased replied with a characteristic epithet reflecting upon Sharpe's family lineage. The deceased then started toward the outside door, but stopped before reaching the door and again addressed Sharpe in a somewhat belligerent manner concerning whether Sharpe knew who he was "messing with." Sharpe had originally asked the deceased to leave, but at this point told the deceased that he must leave the store. Sharpe then took hold of the deceased by his collar and moved him outside the door where at that point the deceased struck Sharpe in the face. Sharpe then hit the deceased and the deceased's legs buckled causing his head to hit the concrete walkway in front of the door. The deceased's companion, Ms. Stevens, remained in the car and did not witness any of the events until she was told that the deceased was lying on the pavement. She thereupon administered to him. In the meantime, the police and an ambulance had been called by the store clerk. The deceased regained consciousness and although he had a laceration on the back of his head refused to go to the hospital or

seek any medical attention. After being ill through the night, the deceased lapsed into unconsciousness and was subsequently hospitalized and died of the injuries received.

The proof also established that the deceased had been drinking prior to the incident and had a blood alcohol reading of .16 at about the time of the altercation with the defendant, Sharpe.

The plaintiffs have presented four issues for review which we will now consider. The first issue, as quoted from plaintiffs' brief, is:

## I

Were the responses of the Court to the Jury Foreman's questions so erroneous and prejudicial to plaintiffs' case as to justify and warrant a new trial?

■ The proof in the case established plaintiffs' theory of assault and battery, and the Court's instruction related this theory. The general charge then included a definition of assault and battery immediately followed by:

The proprietor of a business has the right to expel or restrain a person, who by virtue of abusive conduct, refuses to leave or persists in this abusive conduct after being cautioned, though that person was initially on the premises by express or implied invitation, so long as the expulsion or restraint is by reasonable force.

Reasonable force may be defined as that force which you, ladies and gentlemen, say a reasonably prudent person would have used under the same or similar circumstances.

During the course of the jury's deliberation, the jury returned to the courtroom with a question for the court. We quote from the record:

THE FOREMAN: Yes, we have several questions but the primary one seems to be whether Mr. Sharpe is guilty of assault and battery in ejecting Mr. Smythe from the store and whether he was entitled to do it in this fashion; to wit, by

grabbing ahold of him, did he commit assault and battery?

THE COURT: Well, let me give you this instruction then. I charged it, but I'll charge it again.

The law in Tennessee is that a proprietor of a business has the right to expel or restrain a person, who by virtue of abusive conduct, refuses to leave or persists in this abusive conduct after being cautioned, though that person was initially on the premises by express or implied invitation, so long as the expulsion or restraint is by reasonable force.

I further defined reasonable force under the law of Tennessee as that force which you ladies and gentlemen say a reasonably prudent person would have used under the same or similar circumstances.

That's all of the instruction I can give on that question. What other question do you have, please, sir?

THE FOREMAN: I think that's all right now, Your Honor.

THE COURT: All right, Y'all may retire and continue deliberating.

The jury continued its deliberations and at the end of the day returned to the courtroom where the following proceedings took place:

THE COURT: First of all there's been some question as to whether or not the answer or the law I quoted was responsive to the question that you asked, Mr. Foreman. Can you stand up, please, sir, and tell me whether or not in giving you the law that I gave you, I threw light on the question that you had or was that an inappropriate answer? We're not all positive as to whether I understood your question.

THE FOREMAN: That was an appropriate answer.

THE COURT: You felt that that was an appropriate answer?

THE FOREMAN: We made some progress since going back to the jury room. It might help, Your Honor, if you would read that law one more time.

THE COURT: Would you like to have that particular law read one more time or would you want to wait until the morning to have that read when we return?

THE FOREMAN: I think it would be better possibly, Your Honor, if you read it tonight before we adjourn. It might give them something to think about tonight.

THE COURT: You understand just because y'all are asking me this question and I'm reading you that, that I don't want to give you ideas that this is—you put any more emphasis on this particular law than all the rest of this law you have. Y'all have asked about it and I'm trying to give it to you.

A proprietor of a business has the right to expel or restrain a person, who by virtue of abusive conduct, refuses to leave or persists in this abusive conduct after being cautioned, though that person was initially on the premises by express or implied invitation, so long as the expulsion or restraint is by reasonable force.

Reasonable force would be that force which you ladies and gentlemen say a reasonably prudent person would have used under the same or similar circumstances.

Now, ladies and gentlemen of the jury, apparently y'all are not in a position to arrive—and we certainly don't want to push anyway—a verdict immediately. Is that true, Mr. Foreman?

THE FOREMAN: That's true.

\*     \*     \*     \*     \*     \*

MR. CHIAPELLA: Your last instruction, if you would, I think should have also included reasonable force necessary—should at the end include the words, comma, "if any," period. In other words, I think we've already argued the question whether or not he should have used any force, this giving them the impression he could do anything, and we think the instructions should have included, "if any."

MR. GLASSMAN: I don't think we should start changing the charge.

THE COURT: I understand. I think it's all right. We've had that same argument several times. We'll leave it like it is.

Plaintiffs assert that this part of the charge was tantamount to the Court directing a verdict for the defendant because it indicated to the jury that the Court had found that the deceased was guilty of abusive conduct and refused to leave the premises.

We have difficulty following plaintiffs' argument in this regard. The instruction by the Court is to the effect that a proprietor has a *conditional* right to expel or restrain a person on his premises and it is implicit from the charge that the conditions must be satisfied before the proprietor is justified in taking the action of expelling or restraining. The record reflects that the Court's response to the jury's question adequately addressed the problem presented. The Court made it quite clear that a repeat of the instruction was not to be considered in any way an emphasis on that particular part of the charge. Furthermore, since the jury returned a verdict for the plaintiff, if there had been any error, it would have been harmless. T.R.A.P. 36(b). This issue is without merit.

The second issue presented for review in plaintiffs' brief is:

## II

Was the Court in error in failing to charge plaintiffs' Special Requests Nos. 1, 2, 5, 6, and 17?

■ Plaintiffs' Special Request Nos. 1 and 2 are as follows:

*Plaintiffs' Special Request No. 1*

"A merchant may not purposefully provoke a disturbance with a customer, and then make use of his proprietorship as an excuse for an unnecessary assault in ejecting the customer."

    *Sellman v. Wheeler,* 54 A. 512 (Md.Ct. App.1902)

    *Watraus v. Steel,* 4 Vt. 629 (1829)

*Plaintiffs' Special Request No. 2*

"A merchant does not have a right to strike one who is proceeding in an orderly manner to obey the order to leave the store."

    *Norris v. Whyte,* 57 S.W. 1037 (Mo. 1900)

One of the primary issues before the jury was whether the defendant Sharpe was justified in removing the deceased from the premises. That part of the general charge heretofore set out in connection with the first issue adequately instructed the jury under what conditions the proprietor would be justified in removing a person on the premises. The essence of the requested instructions is included in the general charge. In any event, it is clear that these instructions deal with the question of liability and the jury returned a verdict for the plaintiff. The refusal to give the requested instructions did not affect the outcome of the trial, and therefore if there had been error in refusing to give the instruction it was harmless. T.R.A.P. 36(b). *Methodist Hospital v. Ball,* 50 Tenn.App. 460, 362 S.W.2d 475 (1961).

■ Plaintiffs' Special Request Nos. 5 and 6 are as follows:

*Plaintiffs' Special Request No. 5*

"Negligence is the failure to exercise ordinary care and is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence." T.P.I. 3.10 Civil

*Plaintiff's Special Request No. 6*

"Contributory negligence of a plaintiff is not a bar to his recovery for an injury caused by the willful or wanton misconduct of a defendant."

"Willful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results." T.P.I. 3.51 Civil [V. 1, R. 23]

■ The trial court determined that there was no evidence supporting a negligence theory and from our review of the record we agree with the trial court. The case was tried throughout on the theory of willful conduct on the part of the defendant, Sharpe. The court adequately charged concerning the willful conduct in its instruction dealing with assault and battery.

Here again, the requested instructions pertain to liability, and since the jury returned a verdict for the plaintiff, if there had been any error in refusing to give the instructions the error would be harmless. T.R.A.P. 36(b).

■ Plaintiffs' Special Request No. 17 is as follows:

*Plaintiffs' Special Request No. 17*

"The wealth of the decedent or the value of his estate upon or after his death is not to be considered by you in determining the pecuniary value of his life."

The trial court's general charge fully and adequately instructed the jury as to the elements of damages to be considered in a wrongful death action and the gist of plaintiffs' special request was included in the general charge.

■ Plaintiffs' second issue is without merit.

Plaintiffs' Issue No. 3 is as follows:

### III

Was the jury prejudiced and the verdict tainted by the deliberate misconduct of counsel in injecting the highly inadmissible and prejudicial testimony that "No charges were placed again you by the police department, were they?" A. "No, sir."

It is clear that the question and answer concerning charges by the police department is irrelevant and was improperly injected in the proceedings. However, the trial court, at the time the testimony was elicited from the witness, explicitly instructed the jury that the evidence should not be considered by them in any manner. Furthermore, the verdict for the plaintiff certainly indicates that the jury considered the lack of charges placed by the police department to be completely irrelevant. The error was harmless. T.R.A.P. 36(b). This third issue is without merit.

The fourth and last issue presented by the appellants in their brief is:

### IV

Was the charge of the Court as a whole so meager, inadequate, misleading and confusing as to result in a verdict based on passion, prejudice, caprice and confusion?

■ This issue complaining of the Court's jury charge as a whole was not included in plaintiffs' motion for a new trial and is therefore waived. T.R.A.P. 3(e). Plaintiffs did assert as a ground for a new trial that the jury's verdict resulted from passion, prejudice or caprice, so we will consider that as the issue plaintiffs present for review.

One of the defendants' affirmative defenses was provocation by the deceased. The jury was properly charged that provocation must be considered in mitigation or reduction of damages. Plaintiffs assert, however, that a verdict of one dollar for the death of their decedent shows that the verdict was a result of passion, prejudice or caprice on the part of the jury. Plaintiffs did not assert nor does the record reveal any misconduct on the part of the jury that would indicate passion, prejudice or caprice, other than plaintiffs' assertion concerning the size of the verdict.

In *Jenkins v. Hankins,* 98 Tenn. 545, 41 S.W. 1028 (1897), suit was filed for wrongful death resulting from an assault and battery on the deceased. The defendant, as in the case at bar, relied upon the defense of provocation. The jury returned a verdict against the defendant in the amount of one cent, plus costs. The trial court set aside the verdict on motion of the plaintiff. The Supreme Court found that there was nothing in the result to indicate that the jury was influenced by either passion, prejudice, partiality or corruption, and reversed the trial court. The Court said:

Under the circumstances—provocation and attack of the deceased, its violence and its danger to the defendant—even though he might not have been technically altogether in the right, so as to require that they render a verdict on the issues for him, the jury might very well have assumed that deceased, having provoked the difficulty, brought the result upon

himself, and was not entitled to anything but nominal damages. In other words, that it should not be made a money-making matter to him or to those standing in the position of his representatives. The jury were authorized to say this, and this Court can see no reason to put upon them, for saying it, the imputation that they acted in passion or from motives of partiality, prejudice, or corruption. In cases of this character it is peculiarly their province, in determining the issues, to fix the amount of damages and to fix it with proper abatement on account of the contributing fault of the deceased. Their action is not controllable by the Court below or this Court, unless, as already stated, we can see that it was brought about under the improper influences indicated. In assault cases and some other cases of tort, the question of cost is expressly regulated by the amount of the verdict, and, where the jury find a verdict for an amount not exceeding $5, the cost is to be paid by the plaintiff, except an amount equal to the recovery. Code, Sec. 3922; *Steffner v. Burton*, 3 Pickle, 135. It was expressly contemplated in such cases that there would be necessary instances in which technically, the defendant might be guilty of the offense charged, and yet he might not, for many reasons, be required to compensate the injured party in anything other than a nominal amount. This statute has been many years upon the statute books, has met the approval of the people, and profession, and the Courts, and has served a great purpose in authorizing the infliction of costs upon the undeserving litigant whom the jury shall find to have been in fault, or, for other reasons, not entitled to more compensation for the technical fault of the defendant against whom they find the issues.

This statute is cited to show *legislative adoption and approval of the policy of giving to juries the power to render the smallest verdict when the injury of the aggrieved party has been trivial, or when his own misconduct has been such as to require that his recovery should be so abated as to be practically nominal.* (Emphasis supplied).

*Id.* at 555–557, 41 S.W. at 1030–31.

For a later application of damage mitigation because of provocation, *See Arnold v. Wiley*, 39 Tenn.App. 391, 284 S.W.2d 296 (1955).

■ Apparently the legislature still approves the policy expressed in *Jenkins* as the statute therein referred to is still in force as T.C.A. § 20–12–114 (1980) and provides:

> **Nominal damages recovered.**—In civil actions founded upon assaults, assaults and battery, malicious prosecution, false imprisonment, or for the recovery of damages for overflowing of water by the erection of a gristmill, or other waterworks of utility, the plaintiff recovers no more costs than damages, unless the recovery exceed five dollars ($5.00).

From the evidence in the case before us, the jury could have found and obviously did find that the deceased used abusive language toward Sharpe and struck the first blow, and that Sharpe retaliated in kind with a fist to the jaw. The jury in this case, as the jury in *Jenkins,* had ample evidence before it to find that the "deceased, having provoked the difficulty, brought the result upon himself, and was not entitled to anything but nominal damages." 98 Tenn. at 555, 41 S.W. at 1030.

We have considered all of the issues presented by plaintiffs and find no merit in their contentions. In view of T.C.A. § 20–12–114, the judgment of the trial court which assessed the court costs against the defendants must be modified to assess the court costs in excess of one dollar against the plaintiffs. The judgment as modified is affirmed, and this case is remanded to the trial court for such further proceedings as necessary. Costs of appeal are assessed against appellants.

HIGHERS and FARMER, JJ., concur.