**Shelton W. McNEAL, Plaintiff,**

v.

**Jack OWENS, et al., Defendants.**

**No. 89-2146-HA.**

United States District Court,
W.D. Tennessee, W.D.

June 4, 1991.

Shelton W. McNeal, pro se.

Peter M. Brown, Memphis, Tenn., for defendants.

## MEMORANDUM AND ORDER GRANTING JUDGMENT TO PLAINTIFF

HORTON, Chief Judge.

*Introduction*

Shelton McNeal claims he suffered an unprovoked beating on November 7, 1988, by Swat Team officers in the Shelby County Jail, Memphis, Tennessee. Mr. McNeal claims the beating he suffered occurred in the immediate presence of Sheriff Jack Owens and Chief Deputy Sheriff A.C. Gilless.

Testimony revealed that Sheriff Owens and other jail officers, escorted by members of the Sheriff's Swat Team and a police dog, visited various floors in the jail to talk with inmates about fights and other problems in the jail.

When Sheriff Owens and his officers entered "N"-pod on the third floor, inmates were instructed to leave their cells and go to the end of the pod, a rectangle shaped corridor of cells about 60 feet long. Sheriff Owens asked inmates with penitentiary time to raise their hands. Shelton McNeal and other inmates raised their hands. Mr. McNeal was known as a pod man. He had been elected by the inmates to represent them in dealing with jail administrators. Mr. McNeal told the Sheriff there was no trouble in "N"-pod. He then asked Sheriff Owens when could he be shipped to the penitentiary. Chief Deputy Sheriff Gilless responded by ordering Sgt. Richard Paudert of the Swat Team to take McNeal out of the pod.

When Sgt. Paudert escorted McNeal outside, McNeal claims he was beaten by Sgt. Paudert and a number of other Swat Team

officers. After the beating, McNeal was returned to the pod. Later, McNeal was sent to the jail medical clinic where he was treated for trauma to the head, chest and knee. He was given four 400mg motrin tablets for pain and an ice pack for relief of swelling.

While Sheriff Gilless denied any knowledge that McNeal was beaten by the officers until this lawsuit was filed, Sgt. Paudert testified Mr. McNeal hit him in his right eye with his fist causing an altercation which lasted about thirty seconds.

■ Weighing all of the evidence presented during the trial and determining the credibility of witnesses who testified, the Court finds plaintiff McNeal has shown, by a preponderance of the evidence, that he was beaten by Swat Team officers in the jail. As a result of the beating, Mr. McNeal suffered trauma to his head, chest and right knee. While Mr. McNeal may have irritated Sheriff Owens and other officials by talking when he should have been listening, his words were insufficient justification for the beating. While Sgt. Paudert is obviously a fine and dedicated officer, the Court does not, in this instance, find his testimony that Mr. McNeal hit him in his right eye with his fist to be credible. The Court observed that Sgt. Paudert appeared, to the Court, to be somewhat uncomfortable while on the witness stand. The beating of McNeal occurred in the immediate presence of Sheriff Owens and officials accompanying him. They did nothing to stop the beating which caused a commotion which should have been obvious to all who were present in the area.

■ The unprovoked beating of Mr. McNeal by Swat Team officers in the immediate presence of Sheriff Owens and other jail officials, who did nothing to stop the beating, constitutes a deprivation of rights secured to Mr. McNeal by the Constitution and laws of the United States.

*Testimony*

*Shelton W. McNeal* testified he suffered an unprovoked beating by members of the Swat Team in the Shelby County Jail, Memphis, Tennessee, on November 7, 1988. Mr. McNeal claims the incident occurred when Sheriff Jack Owens, Chief Deputy Sheriff A.C. Gilless, other jail officers and members of the Swat Team entered "N"-pod on the third floor of the jail. The officers had a police dog with them. Mr. McNeal testified inmates housed in "N"-pod where ordered by the sheriff to move to the rear of the pod. Some inmates went quickly, others moved at a slower pace. When the inmates were at the end of the rectangular shaped pod, Sheriff Owens asked those who had state penitentiary time to raise their hands. Several hands were raised including McNeal. Then, Mr. McNeal stated he asked Sheriff Owens to send him to the state penitentiary. He said the Sheriff talked to them about trouble with inmates on the floors of the jail.

Mr. McNeal testified he was the pod man in "N" pod. This person keeps order among inmates, keeps the area clean and represents pod inmates in matters addressed to jail administrators. McNeal said he told Sheriff Owens there was no trouble in "N"-pod. While there had been trouble with fights in the jail, there were no fights in "N"-pod. He said Sheriff Owens told the inmates if there was any more fighting in the jail, his officers would do the fighting.

During the conversation, Mr. McNeal said Sgt. Richard Paudert told him he talked too much and ordered him to step into the hall. He said he thought Sgt. Paudert wanted to talk with him. Instead, Mr. McNeal said Sgt. Paudert started swinging at him with a nightstick or slap jack and other officers joined Paudert beating and kicking him. McNeal said the beating occurred in the Pod area where other inmates could see the beating. After the beating, he was returned to the pod where he said he asked Sheriff Owens what did he say about his being beaten by the officers. Mr. McNeal said Sheriff Owens responded, next time I will tell them to let you talk.

Afterwards, Mr. McNeal testified he was sent to the jail medical clinic by a sergeant, where he was examined and treated for his injuries. Mr. McNeal said he suffered

bruises and injuries to his head, arms, back and legs. The jail log for that shift shows an entry that inmate McNeal was sent to the clinic upon the order of a Captain Gray on November 7, 1988 at the time of 2150.

*Sgt. Richard Paudert,* a member of the Sheriff Department's Swat Team for seven years, testified the team escorted Sheriff Owens and Chief Deputy Sheriff Gilless through the jail for several hours on November 7, 1988. They had one dog with them as a safety precaution. He said he did not recall the officers having night sticks. He said Sheriff Owens was going from pod to pod talking with inmates. Sheriff Owens told the innates who had state penitentiary time that his hands were tied and he could not ship them out of the jail.

While the Sheriff was speaking, Sgt. Paudert testified McNeal spoke to the Sheriff on several occasions in loud and arrogant tones. McNeal called Sheriff Owens "Jack". Sgt. Paudert said Chief Deputy Sheriff Gilless motioned to him by nodding his head. He understood that to be a signal to remove McNeal from the pod. Sgt. Paudert said he asked McNeal to come with him. They walked together. Suddenly, McNeal struck him in the right eye with his fist. He grabbed McNeal. Both men, with legs tangled, hit the floor at the same time. Other officers came to aid Sgt. Paudert. Sgt. Paudert said he did not see anyone kick McNeal. His clothing may have been ripped open. The incident lasted about thirty seconds. He said McNeal was stood up against a wall, then returned to the pod. Sgt. Paudert said he did not see any injuries on McNeal.

*Linda Dickey,* Nurse LPN, testified she has been employed in the jail infirmary for 9½ years. She produced jail clinic records showing that on November 7, 1988, Mr. McNeal sustained trauma to his head, chest and right knee. He was prescribed 400mg of motrin, a pain reliever, and given an ice pack. On December 12, 1988, McNeal was treated for an itching, watery right eye. On March 22, 1989, he was treated for back pain and further treated for back pain on March 23, 1989, with motrin. His last treatment was on May 5, 1989, for right hand trauma. (Ex. # 5).

Ms. Dickey defined trauma as being an obvious injury, bruising or swelling. She testified Mr. McNeal's injuries were minor in that he was prescribed four (4) 400mg motrin tablets which indicated a little bit of pain. She testified the ice pack was for treating swelling because ice helps decrease swelling.

*Danny McCain,* a medical corpsman, testified he made the entries on McNeal's medical records. He said Mr. McNeal told him he had been involved in an altercation. He had injuries to his head, right knee and body which were not serious. He was given motrin for pain and an ice pack. His entry on the medical record reads trauma to head, chest and right knee.

*Sheriff A.C. Gilless* testified he was not aware of any altercation involving Mr. McNeal until the lawsuit was filed. He testified that on November 7, 1988, Sheriff Jack Owens decided to go on the floors and talk with inmates about their problems and about his problems with the jail as Sheriff. There were thirty or more inmates housed in "N"–Pod. Sheriff Owens was trying to talk with all of the inmates. He said Mr. McNeal was disruptive and talked loud over the Sheriff's voice to the extent the Sheriff could not talk to the other inmates. Sheriff Gilless said he did not know Mr. McNeal was whipped. He did not believe the officers had any weapons with them.

Sheriff Gilless said he nodded his head to Sgt. Paudert because Mr. McNeal was loud and disruptive. Mr. McNeal was escorted out into the hallway. He had no idea Mr. McNeal was beaten.

*Donald Rushing,* an inmate at Tennessee's Turney Center Prison, testified the SWAT Team entered "N"–Pod on the third floor of the jail with dogs. He said Sheriff Owens said something about trouble in the jail and they were going to stop it. Mr. McNeal said something. Thereupon, two officers took McNeal out and commenced to beat on him. There was a lot of commotion. The inmates were all in the back of the pod. He identified Sgt. Paudert as looking real familiar. Mr. Rushing testi-

fied the officers beat and kicked McNeal. He said he saw Sheriff Gilless whisper in an officer's ear and then the officer called McNeal out. He said up to that time, there had been no disruption.

*Anthony Valente*, a jail inmate, testified Sheriff Owens and Chief Deputy Sheriff Gilless entered "N"–Pod with ten to fifteen men dressed in dark jumpsuits. Inmates were told to go to the back of the pod. Sheriff Owens wanted to talk with them. When the Sheriff got everyone to the back of the pod, he asked them who had penitentiary time. At that time, McNeal said he did and he wanted to be shipped to the penitentiary. He said McNeal was ordered to the hall where six or seven officers started hitting him with black sticks. While it seemed like the beating was a long time, it was actually less than two minutes.

Mr. Valente said he was standing about three feet from Sheriff Gilless who ordered the officer to take McNeal outside. Valente said he could see the beating and could see the officers use black sticks. While the beating of McNeal was going on, Sheriff Owens continued talking to the inmates. Valente said he was more concerned with what was happening to McNeal than what Sheriff Owens was saying. He said the attack on McNeal was unprovoked violence. There was no reason for it. He said he actually heard Sheriff Gilless tell two officers to take McNeal out of the pod. Valente said the dog was used by the officers to intimidate the inmates. One officer kept aggravating the dog by using a night stick in the dog's mouth.

*Herbert Johnson*, Fort Pillow State Prison, testified Sheriff Owens, Chief Deputy Sheriff Gilless and six to eight officers came to "N"–Pod. The inmates were told to go to the back of the pod. Sheriff Owens started talking about fights in the pod. At that point, McNeal told the Sheriff there were no fights in "N"–Pod. Sheriff Owens asked how many inmates had penitentiary time, whereupon McNeal asked the Sheriff when could he be shipped to the penitentiary. When the Sheriff made a few more statements, an officer, who was always with Sheriff Owens, beckoned to McNeal. Mr. Johnson said he saw somebody grab McNeal and hit him. The inmates asked Sheriff Owens why he would let the officers beat McNeal. Sheriff Owens said nothing. McNeal returned, clothing disarranged with knots on his head. Jackson said he saw McNeal trying to get loose, not fighting the officers. While the beating was being done, the inmates were kept back by the use of a dog. He said McNeal did nothing to cause the problem. There was no problem in "N"–Pod.

*Judy Paudert*, a patrolwoman in the Sheriff's Department, testified to being the wife of Sgt. Paudert. Mrs. Paudert testified Sgt. Paudert came home one night with a deep scratch and a swollen eye.

*Legal Analysis*

In determining if a police officer's conduct rises to the level of a constitutional deprivation, factors such as the need for force, the relationship between the need and the amount applied, the extent of the injury inflicted and the motivation of the police officer in applying the force must be considered. Finally, the circumstances surrounding the use of force must be carefully considered. *Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir.1985).

The Court of Appeals for the Sixth Circuit, quoting from *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973), stated the standard more specifically:

In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir.1988).

In this case, the evidence shows there was no need for the application of brutal force against McNeal. A number of SWAT Team officers were present with the Sheriff. A dog was on the scene. The evidence demonstrates that force was not used in a good faith effort to restore discipline.

Even if Mr. McNeal was talking loudly, that was no justification for beating him. This case is vastly different from the case of *Clark v. Barksdale, et al.*, Case No. 84–2688–HB, where the Court ruled jail officers used only that force reasonably necessary to obtain the thumbprint of Mr. Clark on an arrest ticket. In this case, the officers, in the immediate presence of the Sheriff and other jail officials, intentionally inflicted unnecessary harm upon McNeal.

This unprovoked conduct by the officers, in the immediate presence of the Sheriff and other jail officials, who made no effort to stop the violence, clearly states a claim under 42 U.S.C. § 1983. The law in Tennessee is that words alone, no matter how objectionable or insulting, will not justify an assault or battery against the person who utters them. However, for purpose of mitigating damages, the law is that in a civil action for assault and battery, evidence of provocation, calculated to heat the blood or arouse the passions of a reasonable person, offered at the time of the assault and battery, or so recently as to constitute a part of the res gestae must be considered in mitigation of damages. However, if the evidence fails to show that plaintiff's words and conduct did not provoke the assault and battery, there would be no mitigation of damages. *Arnold v. Wiley*, 39 Tenn.App. 391, 284 S.W.2d 296 (1955).

State officers, acting under color of the State law are not permitted to deprive any person of life, liberty or property without due process of law. A serious or permanent injury is not a prerequisite to a claim under § 1983. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988).

■ In determining the amount of damages appropriate for the plaintiff to recover, the Court was guided by the jury verdict in the case of *Sarah R. Whitt v. James E. Johnson, et al.*, No. 84–2348, tried in this Court. On June 1, 1988, the jury awarded Mrs. Whitt damages against a police officer in the amount of $2,500.00 for depriving Mrs. Whitt of her civil right to liberty without due process of law (false arrest), $2,500.00 for emotional distress and mental anguish and $10,000.00 punitive damages.

The Court is of the opinion Mr. McNeal should recover damages against Sheriff Gilless, in his official capacity in the amount of $2,500.00 for the unprovoked violence against him, for emotional distress and for mental anguish.

This being a *pro se* case, the Court hereby amends the pleading to show this lawsuit as being one against Sheriff A.C. Gilless in his official capacity. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

## ORDER

The Court, based upon its findings and applicable law, concludes the plaintiff, Shelton McNeal, shall have judgment against Sheriff A.C. Gilless, in his official capacity as Sheriff of Shelby County, Tennessee, in the amount of $2,500.00, which is so Ordered.